

2018 MAY 31 PM 5:16
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2017 Grand Jury

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSE LEONEL PAYAN CASTILLO,
  aka "LA VAINILLA,"
  aka "AS D ORO,"
  aka "OBRERO,"
  aka "LA PUMA,"
  aka "EL PROFETA,"
  aka "EL AUSENTE!,"
  aka "MEDIADOR!,"
FNU LNU,
  aka "RALPHEE,"
  aka "RODOLFO,"
  aka "LIC RODOLFO,"
  aka "MARIANO,"
JAIME ARTURO GASTELUM VEGA,
  aka "GREGORIO,"
  aka "PASCUAL,"
ROGELIO PAYAN PALMA,
  aka "SANTOS,"
GUOHUA LUO,
  aka "JUANCARO,"
  aka "JUAN,"
  aka "JC,"
FNU LNU,
  aka "VIVI,"
  aka "VIVIVI,"
JIAZE XIA,
  aka "JZ,"
  aka "Jason,"
YICHAO CHEN,
MICHAEL ANTHONY TREVINO,
SANTANA LEYVA LOPEZ,

CR No. 18CR00335 - AB

I N D I C T M E N T

[21 U.S.C. § 846: Conspiracy to
Possess With Intent to Distribute
and to Distribute Controlled
Substances; 21 U.S.C. § 841(a)(1):
Possession With Intent to
Distribute and Distribution of
Controlled Substances; 18 U.S.C.
§ 924(c)(1)(A)(i): Possession of a
Firearm in Furtherance of a Drug
Trafficking Crime; 18 U.S.C.
§ 922(g)(1): Felon in Possession
of a Firearm; 21 U.S.C.
§ 860(a): Possession with Intent
to Distribute Controlled
Substances Near Schools; 21 U.S.C.
§§ 848(a), (b), (s): Continuing
Criminal Enterprise; 18 U.S.C.
§ 1956(h): Conspiracy to Launder
Monetary Instruments; 18 U.S.C.
§ 1956(a)(1)(B)(i): Laundering of
Monetary Instruments; 18 U.S.C.
§ 2(a): Aiding and Abetting; 21
U.S.C. § 853; 18 U.S.C. § 924(d);
28 U.S.C. § 2461(c); 18 U.S.C.
§ 982(a)(1): Criminal Forfeiture]

```
 1 │ PIERRE VINCENT FUENTES,
   │ REMIGIO ALVAREZ HERRERA,
 2 │   aka "Remigio Herrera,"
   │ MARIA IMELDA JAUREGUI,
 3 │   aka "Maria Imelda Garcia,"
   │   aka "Mary,"
 4 │ MARCOS TOVAR,
   │   aka "Juan Carlos Machado
 5 │     Lares,"
   │   aka "Jesus Inzunza Viveros,"
 6 │ ALEJANDRO MEDRANO,
   │ JOSE VARGAS,
 7 │ JOSHUA DONOVAN CORTEZ,
   │   aka "Blanco,"
 8 │ ISMAEL PARRA VEGA,
   │ RONG JIANG,
 9 │ WEI CHANG GONG,
   │   aka "Ray Gong,"
10 │ ALVARO CASILLAS VILLAREAL,
   │ JOHN XIAO MING HE,
11 │   aka "John He"
   │ SANTIAGO PENA-SANCHEZ,
12 │ JIMMY ZHI QIANG YU,
   │   aka "Jacky," and
13 │ JUN ZHANG,
   │
14 │       Defendants.
```

The Grand Jury charges:

## COUNT ONE

[21 U.S.C. § 846; 18 U.S.C. § 2(a)]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about May 31, 2018, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!" ("PAYAN CASTILLO"), First Name Unknown Last Name Unknown ("FNU LNU"), aka "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO" ("RALPHEE"), JAIME ARTURO GASTELUM VEGA, aka "GREGORIO," aka "PASCUAL" ("GASTELUM VEGA"), ROGELIO PAYAN PALMA, aka "SANTOS"

("PAYAN PALMA"), GUOHUA LUO, aka "JUANCARO," aka "JUAN," aka "JC" ("LUO"), FNU LNU, aka "VIVI," aka "VIVIVI" ("VIVI"), MICHAEL ANTHONY TREVINO ("TREVINO"), SANTANA LEYVA LOPEZ ("LEYVA LOPEZ"), PIERRE VINCENT FUENTES ("FUENTES"), REMIGIO ALVAREZ HERRERA, aka "Remigio Herrera" ("HERRERA"), MARIA IMELDA JAUREGUI, aka "Maria Imelda Garcia," aka "Mary" ("JAUREGUI"), MARCOS TOVAR, aka "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros" ("TOVAR"), ALEJANDRO MEDRANO ("MEDRANO"), JOSE VARGAS ("VARGAS"), JOSHUA DONOVAN CORTEZ, aka "Blanco" ("CORTEZ"), ISMAEL PARRA VEGA ("VEGA"), and SANTIAGO PENA-SANCHEZ ("PENA-SANCHEZ"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1.   to distribute, and to possess with intent to distribute, at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i);

2.   to distribute, and to possess with intent to distribute, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii);

3.   to distribute, and to possess with intent to distribute, at least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and

4.   to distribute, and to possess with intent to distribute, at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, and PAYAN PALMA would ship hundreds of kilograms of cocaine, heroin, methamphetamine, and fentanyl from Mexico to the United States using a network of cross-border drug couriers.

2.   The drug couriers, including defendant MEDRANO and others known and unknown to the Grand Jury, would transport the controlled substances across the U.S.-Mexico border and into the United States, often via the San Ysidro Port of Entry, by concealing the drugs inside hidden compartments, including hollowed-out speaker boxes.

3.   To distribute the illegal drugs within the United States, defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, and PAYAN PALMA, using coded electronic communications, would pass cellular telephone numbers used by U.S.-based drug couriers and stash-house operators, along with passwords or code phrases.

4.   Defendants TREVINO, LEYVA LOPEZ, FUENTES, HERRERA, JAUREGUI, TOVAR, MEDRANO, VARGAS, CORTEZ, VEGA, and PENA-SANCHEZ, and others known and unknown to the Grand Jury, would transport, distribute, and store the controlled substances within the United States, including within the Central District of California.

5.    To collect, launder, and repatriate the millions of dollars in drug proceeds generated from the sale of these drugs, defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, PAYAN PALMA, LUO, and VIVI, using coded electronic communications, would exchange cellular telephone numbers belonging to money couriers -- including Jiaze Xia, aka "JZ," aka "Jason" ("Xia"), Rong Jiang ("R. Jiang"), Wei Chang Gong, aka "Ray Gong" ("Gong"), Santiago Pena-Sanchez ("Pena-Sanchez"), John Xiao Ming He ("Ming He"), and Jimmy Zhi Qiang Yu, aka "Jacky" ("Yu") -- along with a password or code phrase, and the serial number from paper currency, such as a $1 bill.

6.    The use of serial numbers allowed the anonymous money couriers to identify each other when delivering drug proceeds.  Paper currency bearing a designated serial number would serve as a receipt, allowing the money couriers to demonstrate to their Mexico-based confederates that drug proceeds had been delivered to the correct recipient.  By using encoded electronic communications, passcodes, and serial numbers, and by arranging and conducting cash deliveries involving anonymous couriers in parking lots, on street corners, and in hotel rooms, defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, PAYAN PALMA, LUO, and VIVI sought to conceal the nature, source, ownership, and control of the illegal drug proceeds.

7.    Defendants LUO and VIVI would supply the courier telephone numbers, passphrases, and currency serial numbers that defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, and PAYAN PALMA used to coordinate drug-proceeds deliveries in the United States, including in New York, Chicago, and Los Angeles.  Defendants LUO and VIVI would report to defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, and PAYAN PALMA on the status of these money-laundering operations,

including by providing police reports -- often referred to as "receipts" or "documents" – following a law-enforcement seizure to prove that the cash had been seized rather than stolen.

8. Defendant LUO would meet with defendants RALPHEE, GASTELUM VEGA, and PAYAN PALMA at restaurants in Mexico City to coordinate money-laundering operations.

9. Money couriers, including defendant PENA-SANCHEZ, and Xia, R. Jiang, Gong, Villareal, Yichao Chen ("Chen"), Yu, and Jun Zhang ("Zhang"), and others known and unknown to the Grand Jury, would package, count, store, collect, transport, and deliver hundreds of thousands of dollars in cash drug proceeds.

10. Once the drug proceeds had been collected by the U.S.-based money couriers, defendants LUO and VIVI would pay out the equivalent value in pesos to co-conspirators in Mexico and Colombia, less defendants LUO and VIVI's "commission" for laundering the funds.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, PAYAN PALMA, LUO, VIVI, TREVINO, LEYVA LOPEZ, FUENTES, HERRERA, JAUREGUI, TOVAR, MEDRANO, VARGAS, CORTEZ, VEGA, and PENA-SANCHEZ, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On September 3, 2016, using coded language in an electronic communication, defendant PAYAN CASTILLO asked defendant RALPHEE to arrange for a money courier to collect approximately $300,000 in drug proceeds in New York City.

2.    On September 5, 2016, using coded language in an electronic communication, defendant RALPHEE sent defendant PAYAN CASTILLO a screen shot of money courier R. Jiang's cellular telephone number, along with a currency serial number, to coordinate the delivery of $300,000 in drug proceeds in New York City.

3.    On September 5, 2016, in New York City, money courier R. Jiang, acting on behalf of defendants PAYAN CASTILLO and RALPHEE, retrieved a bag containing approximately $306,940 in cash drug proceeds.

4.    On September 7, 2016, using coded language in an electronic communication, defendant PAYAN CASTILLO asked defendant RALPHEE for the cellular telephone number of a U.S.-based courier who could receive an eight-kilogram cocaine shipment, and, in response, defendant RALPHEE provided the cellular telephone number for defendant TREVINO, along with a code phrase ("Mike on behalf of Sobrino").

5.    On September 7, 2016, in Whittier, California, defendant TREVINO took possession of approximately eight kilograms of cocaine from an unidentified co-conspirator.

6.    On October 19, 2016, using coded language in electronic communications, defendants LUO and RALPHEE arranged two $500,000 drug-proceeds deliveries in Chicago, with defendant LUO supplying defendant RALPHEE with two sets of cellular telephone numbers -- including one used by money courier Gong -- two sets of serial numbers, and two passcodes to coordinate the deliveries.

7.    On October 19, 2016, using coded language in electronic communications, defendant LUO offered to provide defendant RALPHEE with Mexican pesos equivalent to the value of the U.S.-dollar

denominated drug proceeds retrieved in Chicago, at an exchange rate that accounted for defendant LUO's commission for collecting and laundering the drug proceeds.

8.   On October 27, 2016, using coded language in an electronic communication, defendant RALPHEE sent defendant LUO a cellular telephone number for an Alhambra, California-based money courier, along with a currency serial number and a passcode ("Miss Li"), to coordinate a drug-proceeds delivery in Los Angeles.

9.   On October 31, 2016, in Chicago, Illinois, money courier Gong, acting on behalf of defendants RALPHEE and LUO, possessed approximately $492,116 in cash drug proceeds, along with multiple money counters, rubber bands, cell phones, and packaging materials.

10.   On October 31, 2016, using coded language in electronic communications, defendant LUO reported to defendant RALPHEE that law enforcement had seized the drug proceeds from money courier Gong in Chicago.

11.   On November 14, 2016, using coded language in an electronic communication, defendant RALPHEE passed to an unidentified co-conspirator a cellular telephone number used by a money courier ("CC #1"), along with a currency serial number and a password, to coordinate a $450,000 drug-proceeds delivery in New York City.

12.   On November 14, 2016, in New York City, money courier Villareal delivered to CC #1 a black suitcase containing approximately $449,794 in drug proceeds.

13.   On November 23, 2016, using coded language in an electronic communication, defendant GASTELUM VEGA passed a cellular telephone number used by money courier Ming He, along with a currency serial

number and a code phrase, to coordinate a $200,000 drug-proceeds delivery in New York City.

14.   On November 30, 2016, in New York City, money courier Ming He, acting on behalf of defendant GASTELUM VEGA, possessed approximately $236,250 in cash drug proceeds.

15.   On November 28, 2016, using coded language in electronic communications, defendant RALPHEE asked defendant LUO for "numbers" to coordinate a drug-proceeds delivery in Los Angeles, and, in response, defendant LUO sent defendant RALPHEE a cellular telephone number used by a money courier, along with a currency serial number and a code phrase ("with Lii").

16.   On November 28, 2016, in Alhambra, California, money courier Zhang, acting on behalf of defendant RALPHEE, retrieved two bags collectively containing approximately $386,340 in cash drug proceeds.

17.   On January 6, 2017, using coded language in electronic communications, defendant RALPHEE and an unidentified co-conspirator discussed a 21-kilogram cocaine delivery in Los Angeles, and defendant RALPHEE obtained from the unidentified co-conspirator a passphrase and a cellular telephone number for defendant HERRERA.

18.   On January 7, 2017, in Maywood, California, defendant HERRERA possessed approximately 21 kilograms of cocaine.

19.   On January 17, 2017, using coded language in electronic communications, defendant GASTELUM-VEGA passed to an unidentified co-conspirator a cellular telephone number used by money courier Xia, along with two currency serial numbers and a password, to coordinate drug-proceeds deliveries of $200,000 each in Boston and New York City.

20.   On January 18, 2017, in New York City, in a Red Roof Inn motel room, money couriers Xia and Chen, acting on behalf of defendant GASTELUM VEGA, possessed approximately $436,000 in bundled drug proceeds, a money counter, rubber bands, packaging material, and heat-seal bags.

21.   On January 18, 2017, using coded language in electronic communications, defendant RALPHEE and an unidentified co-conspirator discussed a pending 10-kilogram cocaine delivery to "Mary" involving cocaine bricks branded with a Nazi insignia, with RALPHEE providing the unidentified co-conspirator with the cellular telephone number for defendant JAUREGUI, along with the code phrase, "with Mary from Fatboy."

22.   On January 19, 2017, in Los Angeles, California, defendant JAUREGUI possessed approximately 6,218.5 grams of cocaine, including at least one cocaine brick marked with a "Nazi" insignia.

23.   On January 27, 2017, using coded language in electronic communications, defendant RALPHEE asked an unidentified co-conspirator for a cellular telephone number belonging to a courier who could receive a drug shipment that had crossed the U.S.-Mexico border earlier that morning, and, in response, the unidentified co-conspirator supplied a code phrase and the cellular telephone number for defendant TOVAR.

24.   On January 27, 2017, in Ontario, California, defendant MEDRANO, after crossing the U.S.-Mexico border earlier that morning, delivered a duffel bag to defendant TOVAR that contained approximately 20 kilograms of fentanyl.

25. On January 27, 2017, in Ontario, California, defendant TOVAR possessed an additional 1,637 grams of fentanyl and 6,144 grams of methamphetamine.

26. On January 27, 2017, in Ontario, California, defendant TOVAR possessed an SWD model M-11 9mm caliber semiautomatic pistol and an AR-type 5.56mm caliber semiautomatic pistol.

27. On January 30, 2017, using coded language in electronic communications, defendant VIVI provided defendant GASTELUM VEGA a phone number, currency serial number, and password to coordinate a $255,000 drug-proceeds delivery in New York City, and defendant GASTELUM VEGA asked that defendant VIVI notify him once the drug-proceeds delivery had been completed.

28. On January 30, 2017, using coded language in electronic communications, defendant VIVI sent defendant GASTELUM VEGA a screen shot depicting a handwritten list of currency denominations and amounts totaling $252,310, along with a picture of a $10 bill, and defendant GASTELUM VEGA directed defendant VIVI to pay him in Mexican pesos, at 20.50 Mexican pesos per U.S. dollar, in Mexico City

29. On February 1, 2017, in South Gate, California, defendant MEDRANO and an unidentified co-conspirator delivered a duffel bag containing approximately 60 kilograms of cocaine to defendant VARGAS at the "Su Casa Furniture" store.

30. On February 1, 2017, in South Gate, California, defendant VARGAS possessed approximately 60 kilograms of cocaine.

31. On February 2, 2017, using coded language in electronic communications, defendants GASTELUM VEGA and VIVI, and an unidentified co-conspirator, arranged a $550,000 drug-proceeds delivery to a money courier at the Comfort Inn hotel in Des Plaines,

Illinois, with the unidentified co-conspirator providing defendant GASTELUM VEGA with defendant PENA-SANCHEZ's cellular telephone number.

32. On February 3, 2017, in Chicago, Illinois, defendant PENA-SANCHEZ, acting on behalf of defendant GASTELUM VEGA, attempted to deliver a red suitcase containing $550,978 in cellophane-wrapped drug proceeds.

33. On February 3, 2017, in Chicago, Illinois, defendant PENA-SANCHEZ possessed approximately 24.06 kilograms of cocaine, along with a digital scale, a drug ledger, and drug-proceeds packaging material.

34. On February 11, 2017, in Huntington Park, California, in a parking lot outside the "Self Made" barbershop, defendant MEDRANO delivered to defendant CORTEZ a large speaker box containing approximately 34.9 kilograms of cocaine.

35. On February 11, 2017, in Bell, California, defendant CORTEZ possessed approximately 275 kilograms of cocaine.

36. On February 23, 2017, using coded language in electronic communications, defendant PAYAN CASTILLO requested and obtained the cellular telephone number for co-conspirator Isaac Melero Rivera ("Rivera") to coordinate a cross-border shipment of cocaine.

37. On February 28, 2017, in Hesperia, California, co-conspirator Rivera, acting on behalf of defendant PAYAN CASTILLO, and others, possessed approximately 1,003.4 grams of cocaine and 1,349.1 grams of methamphetamine.

38. On April 10, 2017, using coded language in electronic communications, defendant GASTELUM VEGA sent defendant PAYAN PALMA a password, currency serial number, and a cellular telephone number for

money courier Yu, all of which had originally been supplied to defendant GASTELUM VEGA by defendant LUO, to coordinate a $301,000 drug-proceeds delivery in Los Angeles.

39. On April 10, 2017, in Los Angeles, California, in a Home Depot parking lot, money courier Yu, acting on behalf of defendants GASTELUM VEGA, PAYAN PALMA, and LUO, possessed approximately $301,000 in bundled cash drug proceeds and, upon his arrest, asked the arresting officers for a "receipt."

40. On April 11, 2017, using coded language in electronic communications, defendant LUO reported to defendant GASTELUM VEGA that law enforcement had seized the $301,000 delivered to money courier Yu.

41. On April 11, 2017, using coded language in electronic communications, defendant GASTELUM VEGA told defendant PAYAN PALMA that law enforcement in Los Angeles had seized the $301,000 delivered to Yu and that defendant PAYAN PALMA should "throw away" his phones and relocate his drugs and drug proceeds.

42. On April 11, 2017, using coded language in electronic communications, defendant GASTELUM VEGA told defendant PAYAN PALMA to warn the courier who had delivered the $301,000 to Yu in Los Angeles to "be careful," and defendant PAYAN PALMA responded that he hoped to receive a "document" soon that proved law enforcement had seized the funds.

43. On April 12, 2017, in Mexico City, defendants GASTELUM VEGA, PAYAN PALMA, and LUO met to discuss the $301,000 in drug proceeds seized in Los Angeles.

44. On April 25, 2017, using coded language in electronic communications, defendant PAYAN PALMA told defendant GASTELUM VEGA

13

that he believed law enforcement had been targeting the Chinese money couriers in a large-scale money-laundering investigation and suggested that the Chinese money couriers contest law enforcement's forfeiture of the $301,000 seized in Los Angeles so they could learn more about the investigation.

45.  On April 25, 2017, using coded language in electronic communications, defendants PAYAN PALMA and GASTELUM VEGA discussed using encrypted phones in the future to avoid law-enforcement detection.

46.  On April 27, 2017, in Mexico City, defendants GASTELUM VEGA, PAYAN PALMA, and LUO, and others known and unknown to the Grand Jury, met to discuss the $301,000 in drug proceeds seized in Los Angeles.

47.  On April 28, 2017, using coded language in electronic communications, defendant GASTELUM VEGA told defendant LUO to change residences, switch phones, and re-register his vehicles right away because "there is an investigation."

48.  On April 28, 2017, using coded language in an electronic communication, defendant PAYAN CASTILLO sent the cellular telephone number for defendant LEYVA LOPEZ, along with a code phrase, to an unidentified co-conspirator to coordinate a methamphetamine delivery.

49.  On April 29, 2017, in West Covina, California, defendant FUENTES delivered to defendant LEYVA LOPEZ approximately 9.65 kilograms of methamphetamine.

50.  On June 6, 2017, using coded language in an electronic communication, defendant PAYAN CASTILLO sent a code phrase and the cellular telephone number for defendant VEGA to an unidentified co-conspirator to coordinate a drug delivery.

51.   On June 7, 2017, in Sun Valley, California, defendant VEGA took possession of a suitcase containing approximately 11 kilograms of fentanyl.

52.   On June 7, 2017, in Sun Valley, California, defendant VEGA possessed at his storage unit an additional approximately 26.98 kilograms of fentanyl and approximately 5.96 kilograms of heroin.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about September 7, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!," First Name Unknown Last Name Unknown ("FNU LNU"), aka "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO," and MICHAEL ANTHONY TREVINO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 7.87 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about January 7, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants First Name Unknown Last Name Unknown ("FNU LNU"), aka "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO," and REMIGIO ALVAREZ HERRERA, aka "Remigio Herrera," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 20.06 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about January 19, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants First Name Unknown Last Name Unknown ("FNU LNU"), also known as ("aka") "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO," and MARIA IMELDA JAUREGUI, aka "Maria Imelda Garcia," aka "Mary," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 6,218.5 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about January 19, 2017, in Los Angeles County, within the Central District of California, defendant MARIA IMELDA JAUREGUI, also known as ("aka") "Maria Imelda Garcia," aka "Mary," knowingly and intentionally possessed with intent to distribute at least 280 grams, that is, approximately 371.27 grams, of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

On or about January 27, 2017, in San Bernardino County, within the Central District of California, and elsewhere, defendants First Name Unknown Last Name Unknown ("FNU LNU"), aka "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO," MARCOS TOVAR, aka "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros," and ALEJANDRO MEDRANO, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 20.05 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

## COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about January 27, 2017, in San Bernardino County, within the Central District of California, defendant MARCOS TOVAR, also known as ("aka") "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros," knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 1,637 grams, of a mixture and substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about January 27, 2017, in San Bernardino County, within the Central District of California, defendant MARCOS TOVAR, also known as ("aka") "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 5,836.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT NINE

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about January 27, 2017, in San Bernardino County, within the Central District of California, defendant MARCOS TOVAR, also known as ("aka") "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros," knowingly possessed firearms, namely, an SWD model M-11, 9mm caliber semiautomatic pistol bearing serial number 89-0020304, and an AR-type 5.56mm caliber semiautomatic pistol devoid of serial numbers or manufacturer markings, in furtherance of a drug trafficking crime, namely, possession with intent to distribute fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Seven of this Indictment, and possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), as charged in Count Eight of this Indictment.

COUNT TEN

[18 U.S.C. § 922(g)(1)]

On or about January 27, 2017, in San Bernardino County, within the Central District of California, defendant MARCOS TOVAR, also known as ("aka") "Juan Carlos Machado Lares," aka "Jesus Inzunza Viveros" ("TOVAR"), knowingly possessed firearms, namely, an SWD model M-11, 9mm caliber semiautomatic pistol bearing serial number 89-0020304, and an AR-type 5.56mm caliber semiautomatic pistol devoid of serial numbers or manufacturer markings, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TOVAR had been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, transportation or sale of a controlled substance, to wit, methamphetamine, in violation of California Health & Safety Code Section 11379(a), in the Superior Court of California, County of San Bernardino, case number FVA1302057, on or about September 3, 2014.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about February 1, 2017, in Los Angeles County, within the Central District of California, defendant JOSE VARGAS knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 60 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about February 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ALEJANDRO MEDRANO knowingly and intentionally distributed at least five kilograms, that is, approximately 34.9 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

## COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about February 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOSHUA DONOVAN CORTEZ, also known as "Blanco," knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 34.9 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about February 11, 2017, in Los Angeles County, within the Central District of California, defendant JOSHUA DONOVAN CORTEZ, also known as "Blanco," knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 240 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. § 860(a)]

On or about February 11, 2017, in Los Angeles County, within the Central District of California, defendant JOSHUA DONOVAN CORTEZ, also known as "Blanco," knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 240 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii), within 1,000 feet of the real property comprising a public high school, namely, Bell High School, located at 4328 Bell Avenue, Bell, California 90201.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about April 29, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!," and SANTANA LEYVA LOPEZ, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 9.65 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about April 29, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!," and PIERRE VINCENT FUENTES, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 9.65 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

On or about June 8, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally distributed at least 400 grams, that is, approximately 11.03 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about June 8, 2017, in Los Angeles County, within the Central District of California, defendant ISMAEL PARRA VEGA knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 11.03 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about June 8, 2017, in Los Angeles County, within the Central District of California, defendant ISMAEL PARRA VEGA knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 26.98 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i)]

On or about June 7, 2017, in Los Angeles County, within the Central District of California, defendant ISMAEL PARRA VEGA knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 5.96 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. §§ 848(a), (b), (s)]

Beginning on an unknown date, and continuing to on or about March 23, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOSE LEONEL PAYAN CASTILLO, also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO," aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!" ("PAYAN CASTILLO"), engaged in a continuing criminal enterprise in that defendant PAYAN CASTILLO knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1) and 846, by committing violations, including, but not limited to, the felony violations alleged in Counts One, Two, Sixteen, Seventeen, and Eighteen, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code, undertaken by defendant PAYAN CASTILLO in concert with at least five other persons with respect to whom defendant PAYAN CASTILLO occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendant PAYAN CASTILLO obtained substantial income and resources.

Furthermore, defendant PAYAN CASTILLO was a principal administrator, organizer, and leader of the criminal enterprise, which involved the possession with intent to distribute and distribution of at least 12 kilograms of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, and one kilogram of methamphetamine, a Schedule II controlled substance.

1        COUNT TWENTY-THREE

2        [18 U.S.C. § 1956(h)]

3 A. <u>OBJECT OF THE CONSPIRACY</u>

4   Beginning on a date unknown and continuing until on or about May

5 31, 2018, in Los Angeles County, within the Central District of

6 California, and elsewhere, defendants JOSE LEONEL PAYAN CASTILLO,

7 also known as ("aka") "LA VAINILLA," aka "AS D ORO," aka "OBRERO,"

8 aka "LA PUMA," aka "EL PROFETA," aka "EL AUSENTE!," aka "MEDIADOR!"

9 ("PAYAN CASTILLO"), First Name Unknown Last Name Unknown ("FNU LNU"),

10 aka "RALPHEE," aka "RODOLFO," aka "LIC RODOLFO," aka "MARIANO"

11 ("RALPHEE") JAIME ARTURO GASTELUM VEGA, aka "GREGORIO," aka "PASCUAL"

12 ("GASTELUM VEGA"), ROGELIO PAYAN PALMA, aka "SANTOS" ("PAYAN PALMA"),

13 GUOHUA LUO, aka "JUANCARO," aka "JUAN," aka "JC" ("LUO"), FNU LNU,

14 aka "VIVI," aka "VIVIVI" ("VIVI"), JIAZE XIA, aka "JZ," aka "Jason"

15 ("XIA"), YICHAO CHEN ("CHEN"), RONG JIANG ("R. JIANG"), WEI CHANG

16 GONG, aka "Ray Gong" ("GONG"), ALVARO CASILLAS VILLAREAL

17 ("VILLAREAL"), JOHN XIAO MING HE, aka "John He" ("MING HE"), SANTIAGO

18 PENA-SANCHEZ ("PENA-SANCHEZ"), JIMMY ZHI QIANG YU, aka "Jacky"

19 ("YU"), and JUN ZHANG ("ZHANG"), and others known and unknown to the

20 Grand Jury, conspired and agreed with each other to knowingly conduct

21 and attempt to conduct financial transactions, affecting interstate

22 and foreign commerce, knowing that the property involved in the

23 financial transactions represented the proceeds of some form of

24 unlawful activity, and which property was, in fact, the proceeds of

25 specified unlawful activity, namely, conspiracy to distribute

26 controlled substances, in violation of Title 21, United States Code,

27 Section 846, and knowing that the transactions were designed in whole

28 and in part to conceal and disguise the nature, the location, the

source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The Grand Jury re-alleges and incorporates by reference as through fully set forth herein the allegations in paragraphs 1 and 5 through 10 of Section B of Count One of this Indictment.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants PAYAN CASTILLO, RALPHEE, GASTELUM VEGA, PAYAN PALMA, LUO, VIVI, XIA, CHEN, R. JIANG, GONG, VILLAREAL, MING HE, PENA-SANCHEZ, YU, and ZHANG, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On September 3, 2016, using coded language in an electronic communication, defendant PAYAN CASTILLO asked defendant RALPHEE to arrange for a money courier to collect approximately $300,000 in drug proceeds in New York City.

2.   On September 5, 2016, using coded language in an electronic communication, defendant RALPHEE sent defendant PAYAN CASTILLO a screen shot of defendant R. JIANG's cellular telephone number, along with a currency serial number, to coordinate the delivery of $300,000 in drug proceeds in New York City.

3. On September 5, 2016, in New York City, defendant R. JIANG retrieved a bag containing approximately $306,940 in cash drug proceeds.

4. On October 19, 2016, using coded language in electronic communications, defendants LUO and RALPHEE arranged two $500,000 drug-proceeds deliveries in Chicago, with defendant LUO supplying defendant RALPHEE with two sets of cellular telephone numbers, including one used by defendant GONG, two sets of serial numbers, and two passcodes to coordinate the deliveries.

5. On October 19, 2016, using coded language in electronic communications, defendant LUO offered to provide defendant RALPHEE with Mexican pesos equivalent to the value of the U.S.-dollar denominated drug proceeds retrieved in Chicago, at an exchange rate that accounted for defendant LUO's commission for collecting and laundering the drug proceeds.

6. On October 27, 2016, using coded language in an electronic communication, defendant RALPHEE sent defendant LUO a cellular telephone number for an Alhambra, California-based money courier, along with a currency serial number and a passcode ("Miss Li"), to coordinate a drug-proceeds delivery in Los Angeles.

7. On October 31, 2016, in Chicago, Illinois, defendant GONG possessed approximately $492,116 in cash drug proceeds, along with multiple money counters, rubber bands, cell phones, and packaging materials.

8. On October 31, 2016, using coded language in electronic communications, defendant LUO reported to defendant RALPHEE that law enforcement had seized the drug proceeds from defendant GONG in Chicago.

9.    On November 14, 2016, using coded language in an electronic communication, defendant RALPHEE passed to an unidentified co-conspirator a cellular telephone number used by a money courier ("CC #1"), along with a currency serial number and a password, to coordinate a $450,000 drug-proceeds delivery in New York City.

10.    On November 14, 2016, in New York City, defendant VILLAREAL delivered to CC #1 a black suitcase containing approximately $449,794 in drug proceeds.

11.    On November 23, 2016, using coded language in an electronic communication, defendant GASTELUM VEGA passed a cellular telephone number used by defendant MING HE, along with a currency serial number and a code phrase, to coordinate a $200,000 drug-proceeds delivery in New York City.

12.    On November 30, 2016, in New York City, defendant MING HE possessed approximately $236,250 in cash drug proceeds.

13.    On November 28, 2016, using coded language in electronic communications, defendant RALPHEE asked defendant LUO for "numbers" to coordinate a drug-proceeds delivery in Los Angeles and, in response, defendant LUO sent defendant RALPHEE a cellular telephone number used by a money courier, along with a currency serial number and a code phrase ("with Lii").

14.    On November 28, 2016, in Alhambra, California, defendant ZHANG retrieved two bags collectively containing approximately $386,340 in cash drug proceeds.

15.    On January 17, 2017, using coded language in electronic communications, defendant GASTELUM-VEGA passed to an unidentified co-conspirator a cellular telephone number used by defendant XIA, along

with two currency serial numbers and a password, to coordinate drug-proceeds deliveries of $200,000 each in Boston and New York City.

16.  On January 18, 2017, in New York City, in a Red Roof Inn motel room, defendants XIA and CHEN possessed approximately $436,000 in bundled drug proceeds, a money counter, rubber bands, packaging material, and heat-seal bags.

17.  On January 30, 2017, using coded language in electronic communications, defendant VIVI provided defendant GASTELUM VEGA a phone number, currency serial number, and password to coordinate a $255,000 drug-proceeds delivery in New York City, and defendant GASTELUM VEGA asked that defendant VIVI notify him once the drug-proceeds delivery had been completed.

18.  On January 30, 2017, using coded language in electronic communications, defendant VIVI sent defendant GASTELUM VEGA a screen shot depicting a handwritten list of currency denominations and amounts totaling $252,310, along with a picture of a $10 bill, and defendant GASTELUM VEGA directed defendant VIVI to pay him in Mexican pesos, at 20.50 Mexican pesos per U.S. dollar, in Mexico City.

19.  On February 2, 2017, using coded language in electronic communications, defendants GASTELUM VEGA and VIVI, and an unidentified co-conspirator, arranged a $550,000 drug-proceeds delivery to a money courier at the Comfort Inn hotel in Des Plaines, Illinois, with the unidentified co-conspirator providing defendant GASTELUM VEGA with defendant PENA-SANCHEZ's cellular telephone number.

20.  On February 3, 2017, in Chicago, Illinois, defendant PENA-SANCHEZ attempted to deliver a red suitcase containing $550,978 in cellophane-wrapped drug proceeds.

21.  On April 10, 2017, using coded language in electronic communications, defendant GASTELUM VEGA sent defendant PAYAN PALMA a password, currency serial number, and a cellular telephone number for defendant YU, all of which had originally been supplied to defendant GASTELUM VEGA by defendant LUO, to coordinate a $301,000 drug-proceeds delivery in Los Angeles.

22.  On April 10, 2017, in Los Angeles, California, in a Home Depot parking lot, defendant YU possessed approximately $301,000 in bundled cash drug proceeds and, upon his arrest, asked the arresting officers for a "receipt."

23.  On April 11, 2017, using coded language in electronic communications, defendant LUO reported to defendant GASTELUM VEGA that law enforcement had seized the $301,000 delivered to defendant YU.

24.  On April 11, 2017, using coded language in electronic communications, defendant GASTELUM VEGA told defendant PAYAN PALMA that law enforcement in Los Angeles had seized the $301,000 delivered to defendant YU and that defendant PAYAN PALMA should "throw away" his phones and relocate his drugs and drug proceeds.

25.  On April 11, 2017, using coded language in electronic communications, defendant GASTELUM VEGA told defendant PAYAN PALMA to warn the courier who had delivered the $301,000 to defendant YU in Los Angeles to "be careful," and defendant PAYAN PALMA responded that he hoped to receive a "document" soon that proved law enforcement had seized the funds.

26.  On April 12, 2017, in Mexico City, defendants GASTELUM VEGA, PAYAN PALMA, and LUO met to discuss the $301,000 in drug proceeds seized in Los Angeles.

1       27.   On April 25, 2017, using coded language in electronic

2   communications, defendant PAYAN PALMA told defendant GASTELUM VEGA

3   that he believed law enforcement had been targeting the Chinese money

4   couriers in a large-scale money-laundering investigation and

5   suggested that the Chinese money couriers contest law enforcement's

6   forfeiture of the $301,000 seized in Los Angeles so they could learn

7   more about the investigation.

8       28.   On April 25, 2017, using coded language in electronic

9   communications, defendants PAYAN PALMA and GASTELUM VEGA discussed

10   using encrypted phones in the future to avoid law-enforcement

11   detection.

12       29.   On April 27, 2017, in Mexico City, defendants GASTELUM

13   VEGA, PAYAN PALMA, and LUO, and others known and unknown to the Grand

14   Jury, met to discuss the $301,000 in drug proceeds seized in Los

15   Angeles.

16       30.   On April 28, 2017, using coded language in electronic

17   communications, defendant GASTELUM VEGA told defendant LUO to change

18   residences, switch phones, and re-register his vehicles right away

19   because "there is an investigation."

20

21

22

23

24

25

26

27

28

COUNT TWENTY-FOUR

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2(a)]

On or about April 10, 2017, in Los Angeles California, within the Central District of California, and elsewhere, defendants JAIME ARTURO GASTELUM VEGA, aka "GREGORIO," aka "PASCUAL" ("GASTELUM VEGA") ROGELIO PAYAN PALMA, aka "SANTOS" ("PAYAN PALMA"), GUOHUA LUO, aka "JUANCARO," aka "JUAN," aka "JC" ("LUO"), and JIMMY ZHI QIANG YU, aka "Jacky" ("YU"), and others known and unknown to the Grand Jury, each aiding and abetting the other, conducted a financial transaction affecting interstate and foreign commerce, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of such proceeds.

Specifically, on or about April 10, 2017, defendants GASTELUM VEGA, PAYAN PALMA, LUO, and YU arranged for an unidentified co-conspirator to deliver to defendant YU a bag containing approximately $301,000 in cash drug proceeds at a Home Depot parking lot in Los Angeles, in a manner designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of such proceeds.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 853, in the event of any defendant's conviction under any of Counts One through Eight and Eleven through Twenty-Two of this Indictment.

2.    Each defendant so convicted shall forfeit to the United States the following:

a.    All right, title, and interest in any and all property, real or personal (i) constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any such offense; or (ii) used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, any such offense including, but not limited to:

i.    $386,340.00 in U.S. Currency seized by law enforcement from Jun Zhang on November 28, 2016;

ii.   $8,170.00 in U.S. Currency seized by law enforcement during the execution of a search warrant at a residence in Alhambra, California, on November 28, 2016;

iii.  one 2014 Mercedes Benz E350 seized by law enforcement from Jun Zhang on November 28, 2016; and

b.    To the extent any such property is not available for forfeiture, a sum of money equal to the total value of the property described in paragraph 2.a.

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant so convicted shall forfeit substitute property, up to

the total value of the property described in paragraph 2 if, as the result of any act or omission of the defendant, the property described in paragraph 2, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)]

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under Counts Nine or Ten of this Indictment.

2.    Upon such conviction, defendant shall forfeit to the United States any firearms and ammunition involved in the commission of the offense, including, but not limited to:

       a.    one SWD model M-11, 9mm caliber semiautomatic pistol bearing serial number 89-0020304; and

       b.    one AR-type 5.56mm caliber semiautomatic pistol devoid of serial numbers or manufacturer markings.

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 2 if, as the result of any act or omission of the defendant, the property described in paragraph 2, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982(a)(1)]

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982, in the event of any defendant's conviction under Counts Twenty-Three or Twenty-Four of this Indictment.

2.    Each defendant so convicted shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to:

a.    $386,340.00 in U.S. Currency seized from Jun Zhang by law enforcement on November 28, 2016;

b.    $8,170.00 in U.S. Currency seized by law enforcement during the execution of a search warrant at a residence in Alhambra, California on November 28, 2016; and

c.    one 2014 Mercedes Benz E350 seized from Jun Zhang by law enforcement on November 28, 2016.

///
///
///
///
///
///
///
///
///
///

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 2 if, as the result of any act or omission of the defendant, the property described in paragraph 2, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_____
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

KEVIN M. LALLY
Assistant United States Attorney
Chief, Organized Crime Drug
    Enforcement Task Force Section

CAROL A. CHEN
Assistant United States Attorney
Deputy Chief, Organized Crime
    Drug Enforcement Task Force
    Section

RYAN H. WEINSTEIN
Assistant United States Attorney
Organized Crime Drug
    Enforcement Task Force Section